**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Oscar Dimas Leyva,<br>Petitioner,<br>v.<br>Luis Rosa, Jr., et al.,<br>Respondents. | No. CV-26-05461-PHX-JZB<br>**ORDER** |

Pending before the Court is Petitioner's "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief." (Doc. 1.) In his Petition, Petitioner asserts that his re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment—in an amongst other claims. (*Id.*) Consequently, Petitioner seeks immediate release from Department of Homeland Security ("DHS") detention. (*Id.* at 14–15.) Respondents have filed a Response, wherein Respondents state that they do "not oppose a bond hearing pursuant to 1226(a)[.]" (Doc. 8 at 1.) However, Respondents oppose Petitioner's request for immediate release. (*Id.* at 3.)

Given Respondents' non-opposition, and because Petitioner's two pending felony DUI charges amount to a material change in circumstances, the Court shall grant the Petition as to Petitioner's request for an individualized bond hearing within seven calendar days.[1]

//

---

[1] Because the Court finds Petitioner is entitled to relief under his Due Process claim, it shall not address his Administrative Procedure Act claim. (Doc. 1 at 12–14.)

## I. Background.

Petitioner is a native and citizen of Mexico. (Doc. 1 at 5.) Petitioner entered the United States in October 2018. (*Id.*) On October 17, 2018, Petitioner was provided with an order of release on recognizance. (*Id.* at 20.) As a condition of his release on recognizance, Petitioner was not to commit any crimes. (*Id.* at 22.)

On July 3, 2026, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody during a traffic stop. (Doc. 8 at 1–2.) Respondents assert that the July 3, 2026, detention was due to Petitioner's "multiple previous DUIs and felony warrants[.]" (*Id.* at 1.) These include two pending felony DUI charges dating back to November 24, 2025. (Doc. 9 at 4.)

Respondents assert that the July 3, 2026, detention was predicated by Petitioner's May 17, 2026, arrest for a DUI. (Doc. 8 at 2.) However, as Petitioner correctly notes, Petitioner was not arrested for a DUI on May 17, 2026. (Doc. 9 at 2.) Rather, the May 17, 2026, arrest was of Victor Manuel Dimas-Leyva, not Petitioner Oscar Natividad Dimas Leyva.[2] (Doc. 8-1 at 3.)

Petitioner has remained in DHS custody since July 3, 2026. (Doc. 1 at 7.) Further, Petitioner currently has an appeal of a January 12, 2023, Immigration Judge ("IJ") order of removal before the Board of Immigration Appeals ("BIA"). (Doc. 8 at 2.)

## II. 28 U.S.C. § 2241 Writ of Habeas Corpus.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the

---

[2] Counsel for Respondents is reminded of their Rule 11 obligations when they submit a document to the Court. Specifically, the Court directs counsel for Respondents to Rule 11(b)(3), which states:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support [.]

Fed. R. Civ. P. 11(b)(3).

legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[3] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

**III. DISCUSSION.**

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562

[3] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

U.S. 216, 219 (2011).

**A. Statutory Classification and Corresponding Liberty Interest**.

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Given that Petitioner was provided with an order of release on recognizance, his detention is properly classified under 8 U.S.C. § 1226(a). Consequently, as numerous other courts throughout the Ninth Circuit have found, "[an] individual[] like Petitioner who w[as] released from immigration detention on an order of recognizance ha[s] a liberty interest in that release." *Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *5 (D. Ariz. Mar. 24, 2026) (citing *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) ("Petitioner's release from custody in January 2024 and ties to his community provide him with a protected liberty interest."); *Colman-Randas v. Cantu*, No. CV-25-03594-PHX-MTL (ASB), 2026 U.S. Dist. LEXIS 45216, at *3–4 (D. Ariz. Mar. 5, 2026) ("But 'the government cannot switch tracks and subject Petitioner to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner in removal proceedings under section 1229a and released her on her own recognizance under section 1226(a).'") (cleaned up) (quoting *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025)); *Carcamo v. Noem*, No. 2:26-cv-00463-RFB-MDC, 2026 U.S. Dist. LEXIS 45025, at *5 (D. Nev. Mar. 5, 2026) ("Because Petitioner was not placed into expedited removal proceedings, but rather placed into standard proceedings under § 1229a, and was previously released by immigration authorities on an OREC pursuant to 8 U.S.C. § 1226, Petitioner's detention is governed by § 1226[.]"); *Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP (HC), 2025 U.S. Dist. LEXIS 258056, at *13–14 (E.D. Cal. Dec. 13, 2025) ("Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings.") (quoting *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 U.S. Dist. LEXIS 163056, at *11 (N.D. Cal. Aug. 21, 2025)).

**B. Proper Procedural Process**.

Because Petitioner has a liberty interest in her release, the Court must now determine what procedures are required. To do so, the Court applies the three-part *Mathews v. Eldridge* test. Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This factor favors Petitioner.

Turning to the second *Mathews* factor, "the risk of an erroneous deprivation [of

liberty] is high" when "neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (citing *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). Thus, there is a high risk of erroneous deprivation of Petitioner's liberty interest absent a pre-deprivation hearing.

Although the record here does not address the terms of Petitioner's prior release, governing regulations required the agency to first determine that he did not pose a danger to the community or flight risk. *See* 8 C.F.R. § 1236.1(c)(8). From this, the Court can infer that Petitioner's prior release constituted an "implicit promise" that his liberty would be revoked only if: (1) he failed to comply with his release conditions; or (2) circumstances regarding his flight risk or dangerousness materially changed. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."); *Pacheco v. Larose*, 818 F. Supp. 3d 1168, 1179 (S.D. Cal. Jan. 29, 2026) ("Petitioner, therefore, held a protectable interest in remaining at liberty . . . contingent on both his compliance with release conditions and the absence of such material changes."). Precedent suggests that Petitioner's two pending felony DUIs, in which he was arrested and charged, (doc. 8-1 at 5), "constitutes a change in material circumstance [and] could reasonably be seen as presenting circumstance requiring arrest and re-detention before a hearing." *Hernandez v. Mullin*, No. CV-26-02034 (TLF), 2026 U.S. Dist. LEXIS 153219, at *12 (W.D. Wash. July 10, 2026) (emphasis added) (holding that "[u]nder these circumstances, the Court finds a prompt post-deprivation hearing would be consistent with due process"). Consequently, the Court finds a prompt post-deprivation hearing would comply with procedural due process. *See id.* Thus, this factor minimally favors Petitioner.

Finally, as to the third *Mathews* factor, the Court must consider the Government's interest in detaining Petitioner without a pre-deprivation hearing. "The government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens] . . . . [and] securing a[ noncitizen's] ultimate removal.'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

1208 (9th Cir. 2022) (citing *Demore v. Kim*, 538 U.S. 510, 513 (2003)). Nevertheless, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 U.S. Dist. LEXIS 202711, at *21 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi*, 792 F. Supp. 3d at 1036. Thus, this factor also minimally favors Petitioner.

For the foregoing reasons, the Court finds that the *Mathews* factors weigh in favor of Petitioner and requires he be provided with an individualized bond hearing. *See Hernandez*, 2026 U.S. Dist. LEXIS 153219, at *14 (finding that, in a case based on similar facts as present in the instant action, that the petitioner was entitled to "a prompt post-deprivation hearing"); *see also Gaochun Zuo v. Semaia*, No. 5:26-cv-04090-ACCV, 2026 U.S. Dist. LEXIS 203712, at *10 (C.D. Cal. Sep. 7, 2026) (same). At the bond hearing, the Government shall bear the burden of establishing by "clear and convincing evidence" that Petitioner is neither a danger nor a flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds*, *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, __ F. Supp. 3d __, 2026 U.S. Dist. LEXIS 106210, at *21–23 (C.D. Cal. May 13, 2026) (collecting cases

placing burden on the Government). Furthermore, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner's financial circumstances and alternative conditions of release." *See Liang Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 U.S. Dist. LEXIS 58212, at *7 (E.D. Cal. Mar. 19, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017)).

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (doc. 1) is **GRANTED** as to his request for a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner with a **CONSTITUTIONALLY ADEQUATE** individualized bond hearing within **SEVEN (7) CALENDAR DAYS** or release Petitioner from custody under the same conditions that existed before Petitioner's detention within **SEVEN (7) CALENDAR DAYS**. At the bond hearing, the government shall bear the burden of establishing by clear and convincing evidence that Petitioner is neither a danger nor a flight risk.

**IT IS FURTHER ORDERED** that Respondents shall provide a notice of compliance within **THREE (3) DAYS** of releasing Petitioner or providing a bond hearing.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and any scheduled hearings in this action are vacated. The Clerk of Court is kindly directed to enter judgment in Petitioner's favor and close this case.

Dated this 16th day of September, 2026.

Honorable John Z. Boyle
United States Magistrate Judge